UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LARRY FULLER,

     Plaintiff,

                                Hon. Robert J. Jonker

v.

                                Case No. 1:16-cv-00475-RJJ-PJG

SHELL POINT MORTGAGE
SERVICING, et al.,

     Defendants.

_____/

**REPORT AND RECOMMENDATION**

Plaintiff filed this action, *in pro per*, in the 48th Circuit Court, Allegan County, Michigan, seeking to reverse the foreclosure and sale of his home in Macatawa, Michigan. (ECF No. 1-2). Defendants removed the action to this Court, asserting federal subject matter jurisdiction on the bases of federal question and diversity of citizenship. (ECF No. 1). It has now become apparent that this Court no longer has diversity jurisdiction and the only federal claims are patently infirm. Defendants have filed motions to dismiss for failure to state a claim upon which relief can be granted as to all claims. (ECF No. 99, 103, 115). Plaintiff does not oppose the dismissal of his federal claims, but he asks that the case be remanded to the state court. (ECF No. 186, PageID.2880-81). For the reasons stated herein, I recommend that defendants' motions to dismiss be granted only as to plaintiff's federal claims and that they be denied without prejudice as to all other claims. I further recommend that the Court decline to exercise supplemental jurisdiction over plaintiff's state claims, and that it

remand the remaining state claims to the 48th Circuit Court, Allegan County, Michigan, pursuant to 28 U.S.C. § 1367(c).

## Underlying Facts and Procedural History

Plaintiff filed the original complaint in Allegan County on April 1, 2016, naming defendants Shellpoint Mortgage Servicing (Shellpoint) and The Bank of New York Mellon (BNYM). (ECF No. 1-2, PageID.12). Plaintiff included the law firm Fabrizio & Brook, P.C., in the defendants' section of the case caption. (*See id.*). In the body of the complaint, plaintiff alleged that the law firm represented Shellpoint during the foreclosure proceeding, and that the firm made certain representations to him concerning his loan modification application. (*See id.* at ¶¶ 15-16, PageID.15). It is unclear whether plaintiff, who was acting *in pro per*, intended to name Fabrizio & Brook as a defendant in this complaint. Notably, that firm never represented Shellpoint in this litigation, either in state court or in this Court. (*See* Notice of Removal, ECF No. 1, PageID.1).

The complaint included eight state-law claims and one federal claim, all relating to the foreclosure of his Macatawa home. (*See* ECF No. 1-2, PageID.13-16). The lone federal claim, Count 4, was based on an alleged violation of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601, *et seq.* (*See* ECF No. 1-2, PageID.15). Unlike the state-law claims, the RESPA claim was unsupported by any factual allegations; it was simply asserted in a one-sentence sub-heading. (*See id.*). By way of relief, plaintiff sought to stay the redemption period, to reverse the foreclosure action and sheriff sale, to obtain restitution of interest paid over the life of the loan, to obtain

a continuation of a loan modification, and to recover legal fees and expenses. (*Id.*, PageID.16-17).

Defendants removed the complaint to this Court on May 6, 2016, pursuant to 28 U.S.C. § 1441, citing two bases for federal subject matter jurisdiction: federal question, 28 U.S.C. § 1331; and diversity of citizenship, 28 U.S.C. § 1332. (ECF No. 1, PageID.2-7). Defendants cited only the RESPA claim as the basis for federal question jurisdiction. (*See id.*, PageID.3). There was complete diversity of citizenship between plaintiff and each of the served defendants: plaintiff was a citizen of Michigan; Shellpoint's members were citizens of various states, none of which was Michigan;[1] and BNYM was a citizen of New York.[2] (*Id.*, PageID.3-5).

On June 13, 2016, plaintiff filed an amended complaint as a matter of right. (ECF No. 15). This added a number of defendants – none of the additional defendants appear to have affected diversity jurisdiction. The amended complaint dropped the RESPA claim, advancing only state law claims, including: unfair and deceptive practices relating to loan servicing, illegal mortgage, fraudulent misrepresentation,

---

[1]Shellpoint is an assumed name for New Penn Financial, LLC. (*See* ECF No. 1, PageID.4). A limited liability company's citizenship is defined by its members' citizenship. *See Carden v. Arkoma Associates*, 494 U.S. 185, 195-96 (1990).

[2]BNYM is a state chartered banking institution of the State of New York, and its principal office is located in New York City. (*See* ECF No. 1, PageID.4). A state chartered banking association is a citizen of the state in which it is located. *Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303, 306-07 (2006). BNYM is a trustee for a number of other entities. (*See* ECF No. 1, PageID.1). A trust's citizenship is established by the citizenship of the trustee. *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 463-64 (1980).

breach of contract, procedurally defective mortgage, wrongful foreclosure, negligence, and negligent infliction of emotional distress. (*Id.*, PageID.277-84).

Plaintiff followed with various motions, including motions to remand (ECF No. 56, 68) and motions to stay the foreclosure sale (ECF No. 16, 23). Defendants filed two motions to dismiss the amended complaint for failure to state a claim upon which relief can be granted. (ECF No. 36, 82).

Plaintiff sought leave of Court to file a second amended complaint on August 29, 2016. (ECF No. 65). He also filed a motion to remand the case to state court on the same day. (ECF No. 68). Before the Court could rule on his motion to file a second amended complaint, plaintiff filed a third motion to amend the complaint on September 8, 2016. (ECF No. 72). Defendants BNYM, Shellpoint, Resurgent Mortgage Servicing, Bruce Williams, Saul Sanders, and Gerald Hassell (collectively " the BNYM defendants") filed a response in opposition to plaintiff's motion to file a third amended complaint. (ECF No. 80). They argued that the Court should deny plaintiff's request to add the proposed additional counts, as the amendments would be futile. (*Id.*, PageID.1160-65). The BNYM defendants opposed the joinder of proposed defendants Exchange Financial Corporation, Scott DeWolf, and Fabrizio & Brook.[3] They argued that the joinder of Exchange Financial would be impractical because the corporation had been dissolved (*id.*, PageID.1165), and that joinder of Mr. DeWolf would serve only

---

[3]The BNYM defendants also opposed the joinder of unidentified DOE defendants. (ECF No. 80, PageID.1166). That part of their motion was successful, as the Court directed plaintiff to eliminate any reference to DOE defendants in the proposed amended complaint. (*See* 10/11/16 Order, ECF No. 85, PageID.1411).

to harass him, as he had "no personal interest in the Note, Mortgage, or Property." (*Id.*). With respect to Fabrizio & Brook, the BNYM defendants argued that "there is no reasonable basis for [the firm's] joinder because Michigan law would impose no liability on it under the facts alleged in [p]laintiff's lawsuit." (*Id.*, PageID.1166).

The BNYM defendants did not raise the issue of fraudulent joinder, nor did they argue, in the alternative, that any of the proposed nondiverse parties were dispensable. Instead, by relying upon 28 U.S.C. § 1447(e), they appear to have conceded that the joinder of defendants Exchange Financial Corporation, Scott DeWolf, and Fabrizio & Brook would destroy subject matter jurisdiction. (*See* ECF No. 80, PageID.1165-66).[4]

On October 11, 2016, the Court conducted a hearing on plaintiff's two motions to amend the complaint and his motion to remand. (Minutes, ECF No. 84). The Court dismissed as moot plaintiff's motion to file a second amended complaint, and it denied without prejudice plaintiff's motion to remand. (10/11/16 Order, ECF No. 85, PageID.1411-12). The Court granted plaintiff's motion for leave to file a third amended complaint with certain conditions, ordering plaintiff to file the conforming version within thirty days.[5] (*See id.*, PageID.1411). By Court order, this version of the complaint was designated "Plaintiff's Corrected Second Amended Complaint." (*Id.*).

---

[4]28 U.S.C. § 1447(e) provides: "If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court."

[5]In light of the amended complaint, the Court dismissed without prejudice defendants' then pending motions to dismiss. (*See* 10/11/16 Order, ECF No. 85, PageID.1412).

The Corrected Second Amended Complaint was filed November 9, 2016. (ECF No. 86). It remains the operative complaint, and it shall hereinafter be referred to simply as the pending complaint.

Of the thirteen defendants named in the pending complaint, five are residents of Michigan: Attorney Karen Plaza, who represents Shellpoint in this case; the law firm Fabrizio & Brook; Attorney Jonathan Engman of Fabrizio & Brook; Exchange Financial Corporation; and Scott DeWolf. (ECF No. 86, PageID.1414). According to the pending complaint, Exchange Financial Corporation "was the loan origination company of Plaintiff's mortgage. . . . [It] acted in bad faith since the beginning in 2004 before Plaintiff ever signed loan documents." (*Id.* at ¶ 2, PageID.1416). Consistent with the allegations in the original complaint, plaintiff contends that the Fabrizio & Brook attorneys "were supposed to work out a loan repayment plan to assist Plaintiff with saving his home. . . . At all times they led Plaintiff to believe there would be a successful loan modification." (*Id.* at ¶ 9, PageID.1416-17). The pending complaint now explicitly adds the allegation that the law firm committed fraud with respect to its representations concerning the loan modification and the promised recision of the foreclosure, and that the firm violated Michigan law during the foreclosure proceedings and the sheriff's sale. (*Id.* at ¶¶ 9, 124-37, PageID.1416-17, 1427-29).

The claims in the pending complaint include the following: violations of Michigan's Consumer Mortgage Protection Act (Count 1); illegal mortgage (Count 2); fraud (Count 3); breach of contract (Count 4); procedurally defective foreclosure (Count 5); denial of Fourteenth Amendment due process rights (Count 6); wrongful

foreclosure (Count 7); negligence (Count 8); negligent infliction of emotional distress (Count 9); promissory estoppel (Count 10); lack of standing to foreclose (Count 11); quiet title (Count 12); statutory conversion (Count 13); common law conversion (Count 14); and vicarious liability (Count 15).[6]  The only claims that raise a federal question are Counts 6 and 14 under the Fourteenth Amendment.[7]  Michigan resident defendants are included in each of the fifteen counts.  There appears to be no specific allegation, much less any claim, against Attorney Karen Plaza, however.

On January 13, 2017, defendants Fabrizio & Brook and Jonathan Engman filed a motion to dismiss the pending complaint, pursuant to Federal Rule of Civil Procedure 12(b)6), for failure to state a claim upon which relief can be granted.  (ECF No. 99).  They argued, among other things, that the Fourteenth Amendment claims must be dismissed, as none of the defendants are state actors.  (*Id.*, PageID.1769-70).  They did not raise the issue of fraudulent joinder; nor did they argue that they should be dismissed as dispensable parties.  (*See id.*, PageID.1755 (issues presented)).

---

[6]In the introduction to the pending complaint, plaintiff inexplicably includes the notation: "Violations of the Fair Debt Collection [Practices] Act (Michigan and Federal)."  (ECF No. 86, PageID.1415).  There is no claim that references either the federal or state version of that statute; nor can any of the counts reasonably be inferred to contain such a claim.  As such, it is manifestly insufficient to state a claim.  *See* FED. R. CIV. P. 8(a)(2); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (Notice pleading "require[s] more than labels and the bare assertion of legal conclusions[.]").

[7]There appears to be no substantive difference between Counts 6 and 14.  (*See* ECF No. 86 at ¶¶ 204-12, 315-24, PageID.1435-36, 1446).

The BNYM defendants filed an amended Rule 12(b)(6) motion on January 27, 2017. (ECF No. 103). They argued, among other things, that the Fourteenth Amendment claim failed as a matter of law due to lack of state involvement. (*Id.*, PageID.1931-32). As with their opposition to the motion to amend the complaint, the BNYM defendants did not raise the issue of fraudulent joinder; nor did they argue that any of the newly-joined defendants should be dismissed as dispensable parties. (*See id.*, PageID.1907-08 (issues presented)).

Defendants Exchange Financial Corporation and Scott DeWolf filed a Rule 12(b)(6) motion arguing that the only claim asserted against them is barred by the statute of limitations. (ECF No. 115). As with the other defendants' motions, there was no mention of either fraudulent joinder or dispensable parties. (*See* ECF No. 115, 116).

On May 12, 2017, I conducted a hearing on defendants' respective motions to dismiss (ECF Nos. 99, 103 and 115) at which counsel for defendants and plaintiff, *in pro per*, appeared.[8] (Minutes, ECF No. 182). During the hearing, I confirmed with plaintiff that none of the defendants acted under any authority from the State of Michigan for the purpose of a Fourteenth Amendment claim. Having confirmed that

---

[8]On the morning of the May 12 hearing, plaintiff filed a Notice of Automatic Stay, based on a Chapter 13 bankruptcy petition he filed that day. (*See* ECF No. 180, 182). That stay was ineffective with respect to the pending litigation, as the bankruptcy stay effects only actions *against* the debtor or his property. (*See* ECF No. 180-1, PageID.2837). Moreover, the bankruptcy court dismissed the Chapter 13 proceedings on June 16, 2017. (*In re Larry Wayne Fuller*, No. 17-02409-jtg, ECF No. 13 (Bankruptcy Ct. W.D. Mich.).

there was no basis to the federal claims (Counts 6 and 14), and noting that there was no longer diversity jurisdiction, I questioned the parties regarding whether this Court should remand the case to the state court from which it came.

Plaintiff restated his position that the case should be remanded. Defendants objected to a remand and asked for leave to file supplemental briefs on the jurisdictional issues. I granted the request for supplemental briefing. (*See* 5/12/17 Order, ECF No. 181). The BNYM defendants and Karen Plaza (hereinafter Ms. Plaza will be included in the collective term "the BNYM defendants") filed a supplemental brief concerning this Court's jurisdiction on May 26, 2017. (ECF No. 184). Defendants Fabrizio & Brook and Jonathan Engman filed a concurrence with the BNYM's supplemental brief. (ECF No. 185). On June 9, 2017, plaintiff filed a response in opposition to defendants' supplemental briefs, and he included in his brief a motion to remand.[9] (ECF No. 186; *see id.*, PageID.2881). The BNYM defendants responded to plaintiff's motion for remand on June 21, 2017, citing to their arguments in their supplemental brief. (ECF No. 188). Defendants Fabrizio & Brook and Jonathan Engman also filed a response to plaintiff's motion for remand, similarly relying on the arguments in the BNYM defendants' supplemental brief. (ECF No. 189). Defendants Exchange Financial Corporation and Scott DeWolf neither filed supplemental briefing

---

[9]Plaintiff seeks remand, as well as a award of costs and expenses, under 28 U.S.C. § 1447(c). I recommend that his motion be denied. In *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 641 (2009), the Supreme Court held that, "[w]hen a district court remands claims to a state court after declining to exercise supplemental jurisdiction, the remand order is not based on a lack of subject matter jurisdiction for purposes of [28 U.S.C.] §§ 1447(c) and (d)."

concerning the jurisdictional issues nor did they respond to plaintiff's motion for remand.

## **DISCUSSION**

A defendant in a state-court civil action may remove the matter to federal court if the federal court has original jurisdiction over the action. *See* 28 U.S.C. § 1441(a). Federal courts have original jurisdiction over civil actions "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. This is often referred to as "federal question" jurisdiction. Federal courts also have original jurisdiction when there is diversity of citizenship and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). If the Court determines, after removal, that it lacks subject matter jurisdiction, it must remand the case to the state court from which it came. *See* 28 U.S.C. § 1447(c).

The removing party bears the burden of establishing federal jurisdiction. *See Alexander v. Electronic Data Sys. Corp.*, 13 F.3d 940, 948-49 (6th Cir. 1994). That burden remains throughout the course of the litigation. *See DHSC, LLC v. California Nurses Ass'n*, No. 16-3737, ___ F. App'x ___, 2017 WL 2838338, at *4 (6th Cir. July 3, 2007) (citing *McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189 (1936). "Any substantial doubts as to the propriety of removal must be resolved against the proponent of a federal forum." *Adorno Enterprises, Inc. v. Federated Dep't Stores, Inc.*, 629 F. Supp. 1565, 1573 (D.R.I. 1986) (citing *Woods v. Firestone Tire & Rubber Co.*, 560 F. Supp. 588, 590 (S.D. Fla. 1983); *Town of Freedom v. Muskogee Bridge Co.*, 466 F. Supp. 75, 77 (W.D. Okl. 1978)). "The district court, in a challenged

[removal] case, may retain jurisdiction only where its authority to do so is clear." *Gorman v. Abbott Labs*, 629 F. Supp. 1196, 1203 (D.R.I. 1986). "The right of removal being in derogation of state sovereignty, the act of granting it ought not to be enlarged beyond what is 'definite and free from ambiguity.'" *McCaffrey v. Wilson & Co.*, 10 F.2d 368, 368 (D. Mass. 1926) (quoting *Lee v. Chesapeake & Ohio, Railway Co.*, 260 U.S. 653, 660 (1923)).

This case was removed to federal court based on plaintiff's assertion of a RESPA claim and the diversity of the citizenship of the originally-served defendants: the BNYM and Shellpoint. (ECF No. 1, PageID.3-4). Much of the BNYM defendants' supplemental brief addresses the issue of whether this Court had subject matter jurisdiction at the time of removal. (*See* ECF No. 184, PageID.2854-2858). That issue is a bit more muddied than defendants' brief suggests.

First, with respect to federal question jurisdiction, the only arguable federal claim in the original complaint – the RESPA claim – consisted of a single line, a subheading, containing a purely conclusory statement: "Count 4, Violations of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601, *et seq.*" (ECF No. 1-2, PageID.15). Giving the "claim" the benefit of every doubt, there are no factual allegations in the complaint that reasonably can be interpreted to support it. As such, it is doubtful that it meets the "well-pleaded" standard. "Whether a claim arises under federal law for purposes of federal question jurisdiction is governed by the 'well-pleaded complaint' rule, which provides that 'federal question exists only when a federal question is presented on the face of plaintiff's *properly* pleaded complaint.'"

*Archer v. Arms Technology, Inc.*, 72 F. Supp. 2d 784, 787 (E.D. Mich. 1999) (quoting

*Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)) (emphasis supplied).

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must provide " 'a

short and plain statement of the claim showing that the pleader is entitled to relief' in

order to 'give the defendant fair notice of what the . . . claim is and the grounds upon

which it rests.' " *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting

*Conley v. Gibson*, 355 U.S. 41, 47 (1957) and FED. R. CIV. P. 8(a)(2)).  While this notice

pleading standard does not require "detailed" factual allegations, it does require more

than labels and the bare assertion of legal conclusions.  *See Twombly*, 550 U.S. at

555.[10]

Second, as to diversity jurisdiction, there is some question as to whether plaintiff

named the Fabrizio & Brook law firm, a Michigan resident, as a defendant in his

original Allegan County complaint.  He names the firm in the caption of the complaint

in the box designated for defendants.[11]  (*See* ECF No. 1-2, PageID.12, 13).  Plaintiff also

_____

[10]Neither *Chicago v. International College of Surgeons*, 522 U.S. 156, 163 (1997), nor *Caterpillar v. Williams*, 482 U.S. 386, 392 (1987), both cited by the BNYM defendants (*see* ECF No. 184, PageID.2857), support the proposition that plaintiff's cryptic reference to RESPA is sufficient to confer federal question jurisdiction.  *See International College of Surgeons*, 522 U.S. at 163 (" 'It is long settled law that a cause of action arises under federal law only when the plaintiff's *well-pleaded* complaint raises issues of federal law.' " (quoted citation omitted) (emphasis supplied)); *Williams*, 482 U.S. at 392 ("The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's *properly pleaded* complaint." (emphasis supplied)).

[11]The BNYM defendants contend that the inclusion of the designation "Defendants' Attorneys" with Fabrizio & Brooks' name in the caption of the complaint

includes factual allegations concerning the firm that are similar to some of the allegations in the pending complaint. (*See id.* at ¶¶ 15-16, PageID.15 and Exhibit 4, PageID.31; *see also* ECF No. 86 at ¶¶ 127-28, PageID.1427-28). On the other hand, the firm was not served with the Allegan County Circuit Court summons or the complaint.[12]

For purposes of this report and recommendation, I assume, without deciding, that this Court had diversity jurisdiction at the time the notice of removal was filed. Under the pending complaint, however, complete diversity of citizenship between plaintiff and all defendants has been lost. The federal claims under the Fourteenth Amendment should be dismissed as they are patently groundless, as all parties have now recognized. The remaining question, then, is whether this Court should retain supplemental jurisdiction over the remaining state claims. I recommend against it.

---

indicates that the firm was not intended to be named as a party defendant. (ECF No. 184, PageID.2855). But this contention misses the fact that plaintiff used the same designation when he named Karen Plaza in the caption of the pending complaint. (*See* ECF No. 86, PageID.1414). Yet no one, including Ms. Plaza, doubts that she is a party to this litigation.

[12]The question of whether an unserved resident defendant defeats removal under 28 U.S.C. § 1441(b) remains somewhat unresolved. *See* 13E CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3608 at 358-59 (3d ed. 2009). The plain language of the removal statute, which indicates that a defendant must be "properly joined and served," 28 U.S.C. § 1441(b)(2), answers the question to my satisfaction.

## I.     The Court Should Dismiss Plaintiff's Fourteenth Amendment Claims.

In Counts 6 and 14 of the pending complaint, plaintiff alleges that the defendants violated his due process rights under the Fourteenth Amendment. (ECF No. 86, PageID.1435-36, 1446). To prevail on a due process violation claim under the Fourteenth Amendment, plaintiff must allege and prove that the purported violation of his due process rights was perpetrated by a "state actor." *See Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 924 (1982) ("Because the [Fourteenth] Amendment is directed at the States, it can be violated only by conduct that may be fairly characterized as 'state action.' "). It is undisputed – in fact, the parties agree – that none of the named defendants are state actors for purposes of the Fourteenth Amendment. Accordingly, I recommend that Counts 6 and 14 be dismissed for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6).

## II.    Should The Court Dismiss The Fourteenth Amendment Claims, It Should Decline to Retain Supplemental Jurisdiction.

As a general rule, in cases in which a federal court dismisses all federal claims, it will decline to exercise supplemental jurisdiction over a plaintiff's state-law claims.[13] *See* 28 U.S.C. § 1367(c)(3); *see also Gamel v. City of Cincinnati*, 625 F.3d 949, 952 (6th Cir. 2010) ("When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims or remanding them to state court if the action was removed.") (citation and quotation omitted); *Brown v.*

---

[13]"[S]upplemental jurisdiction does not disappear when the federal claim that gave rise to original jurisdiction in the first place is dismissed." *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

*Cassens Transp. Co.*, 546 F.3d 347, 363 (6th Cir. 2008) ("[A] federal court should typically decline to exercise pendent jurisdiction over a plaintiff's state-law claims after dismissing the plaintiff's federal claims." (citing 28 U.S.C. § 1367(c)(3); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)). A district court has broad discretion in deciding whether to exercise supplemental jurisdiction over state law claims. *Smith v. Erie County Sheriff's Dep't*, 603 F. App'x 414, 424 (6th Cir. 2015); *see Habich v. City of Dearborn*, 331 F.3d 524, 535 (6th Cir. 2003) ("Supplemental jurisdiction is a doctrine of discretion, not of . . . right."); *see also Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1255 (6th Cir. 1996) ("After a Rule 12(b)(6) dismissal, there is a strong presumption in favor of dismissing supplemental claims."). The presumption that a Rule 12(b)(6) dismissal of the touchstone claims precludes the exercise of supplemental jurisdiction over any remaining claims can only be overcome in "unusual circumstances." *Musson Theatrical, Inc.*, 89 F.3d at 1255; *see Brown v. Burch, Porter & Johnson, PLLC*, Nos. 15-6242, 15-6243, 2016 WL 9448027, at *3 (6th Cir. Nov. 21, 2016). I find that this case does not present the unusual circumstances necessary to overcome the general rule and strong presumption against this Court's exercise of supplemental jurisdiction.

The BNYM defendants oppose plaintiff's motion to remand, arguments to which all defendants except Exchange Financial Corporation and Scott DeWolf join. The BNYM defendants advance two general arguments: the first essentially contends that the Court cannot remand this case; the second, that it could, but should not. With respect to the first, the BNYM defendants argue that the Court still has diversity

jurisdiction. (ECF No. 184, PageID.2858-62). They contend that the original diversity jurisdiction was not lost through the amended complaint because the nondiverse defendants were "fraudulently joined" (*id.*, PageID.2858-61), and even if they were not, the Court should dismiss them as "dispensable" parties (*id.*, PageID.2861-62). In the alternative, the BNYM defendants ask the Court to exercise its discretion to retain supplemental jurisdiction. (*Id.*, PageID.2862-63).

A.    The Court No Longer Has Diversity Jurisdiction

A federal court has diversity jurisdiction if each party to the lawsuit is a citizen of a different state and the amount in controversy exceeds $75,000.[14]  28 U.S.C. § 1332(a). For diversity purposes, citizenship is equivalent to domicile. *See Stifel v. Hopkins*, 477 F.2d 1116, 1120 (6th Cir. 1973) (citing *Gilbert v. David*, 235 U.S. 561, 569 (1915)). "[A]n individual's 'domicile' is his 'true, fixed, and permanent home and principal establishment.' " *Eastman v. University of Mich.*, 30 F.3d 670, 672-73 (6th Cir. 1994) (quoting BLACK'S LAW DICTIONARY 484 (6th ed. 1990)). For this Court to have diversity jurisdiction under Section 1332, there must be *complete* diversity, meaning, for purposes of this case, that none of the defendants has the same citizenship as plaintiff. *See Lincoln Property Co. v. Roche*, 546 U.S. 81, 89 (2005).

As a "general rule," diversity is determined at the time of the filing of the complaint. *See Smith v. Sperling*, 354 U.S. 91, 93 & n.1 (1957). The Sixth Circuit has held, however, that, the filing of an amended complaint naming nondiverse parties

---

[14]The amount in controversy in this case plainly exceeds $75,000, as plaintiff is seeking at least $3,000,000 in damages. (*See* ECF No. 86, PageID.1448-49).

may divest the Court of diversity jurisdiction. *See Curry v. U.S. Bulk Transp., Inc.*, 462 F.3d 536, 540 (6th Cir. 2006) (citing *American Fiber & Finishing, Inc. v. Tyco Healthcare Group, LP*, 362 F.3d 136, 141-42 (1st Cir. 2004); *Casas Office Mach., Inc. v. Mita Copystar Am., Inc.*, 42 F.3d 668, 674 (1st Cir. 1994); *Fiedler v. Reliance Elec. Co.*, 823 F.2d 269, 270-71 (8th Cir. 1987); *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010-11 (3d Cir. 1987); *Duchon v. Cajon Co.*, 791 F.2d 43, 47 n.2 (6th Cir. 1986)). Quoting "a leading civil procedure treatise," the Sixth Circuit explained:

> "[A] change in parties that goes to the very essence of the district court's ability to adjudicate the merits of the dispute effectively – most notably the addition of indispensable parties – may destroy [diversity jurisdiction]. The cases indicate that the court will take account of whether the plaintiff has been dilatory or is trying to destroy diversity, whether the plaintiff will be significantly disadvantaged if the amendment is not allowed, and whether remanding the action to the state court will prejudice the defendant."

*Curry*, 462 F.3d at 540 (quoting 14B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3723 (3d ed. 1998)).

While the *Curry* decision involved the substitution of named defendants for "John Does," *see* 462 F.3d at 539, the holding is not limited to that scenario. The Sixth Circuit cited, with approval, cases from other circuits in which the courts held that diversity jurisdiction had been destroyed by the addition of an indispensable party. *See id* at 540 (citing *Fiedler*, 823 F.2d at 270-71 (in a products liability case, plaintiff joined the product's distributor as a party defendant); *Steel Valley Auth.*, 809 F.2d at 1010-11 ("[W]hen a nondiverse party is added to a federal proceeding and the party's presence

is indispensable to the furnishing of complete relief, remand is mandated where federal subject matter jurisdiction depends on diversity jurisdiction, even though removal was originally proper.")); *see also Takeda v. Northwestern Nat'l Life Ins. Co.*, 765 F.2d 815, 819 (9th Cir. 1985) (holding the addition of an indispensable nondiverse party "would destroy diversity"); *Adorno Enterprises, Inc. v. Federated Dep't Stores, Inc.*, 629 F. Supp. 1565, 1573 (D.R.I. 1986) ("It is beyond doubt that the emergence of an indispensable party, if nondiverse, should defeat subject matter (diversity) jurisdiction and require remand." (cited authority omitted)).

As discussed below, the defendants have failed to meet their ongoing burden of demonstrating diversity jurisdiction, as they have failed to show, as they must, either that all of the nondiverse defendants were fraudulently joined or that they are all dispensable.

B.   Defendants Have Failed to Meet Their Heavy Burden To Show That The Nondiverse Defendants Were Fraudulently Joined.

The pending complaint names a number of party defendants who are apparently citizens of the State of Michigan – these include:  Karen Plaza, Fabrizio & Brook, Jonathan Engman, Exchange Financial Corporation, and Scott DeWolf.  (ECF No. 86, PageID.1414).   None of the parties dispute that these defendants are Michigan residents.

Instead, the BNYM defendants argue that the Michigan resident defendants should either be disregarded as fraudulently joined or dismissed as dispensable parties. (ECF No. 184, PageID.2859-62).[15] I disagree.

The doctrine of fraudulent joinder was developed by the Supreme Court at the turn of the last century. "That era saw a spate of tort actions against large industrial companies, often railroads, brought by employees injured on the job. To prevent removal of these cases to federal court, the plaintiffs would often join other in-state employees." *Murriel-Don Coal Co. v. Aspen Ins. UK Ltd.*, 790 F. Supp. 2d 590, 594 (E.D. Ky. 2011) (citing E. Farish Percy, *Making a Federal Case of It: Removing Civil Cases to Federal Court Based on Fraudulent Joinder*, 91 IOWA L. REV. 189, 191 (2005)). "To preserve the companies' ability to remove these cases to federal court, the Supreme Court 'rather abruptly announced that sham parties could be ignored when determining whether complete diversity of citizenship was present in a case.' " *Murriel-Don Coal Co.*, 790 F. Supp. 2d at 594 (quoting James M. Underwood, *From Proxy to Principle: Fraudulent Joinder Reconsidered*, 69 ALB. L. REV. 1013, 1031 (2006)). The Supreme Court noted that the "right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy. So, when in such a case a resident defendant is joined with the non-

---

[15]The fraudulent joinder argument appears to be at odds with the position the BNYM defendants took in opposing plaintiff's motion to amend the complaint, in which they implicitly conceded that the joinder of defendants Exchange Financial Corporation, Scott DeWolf, and Fabrizio & Brook would destroy subject matter jurisdiction. (*See* ECF No. 80, PageID.1165-66).

resident, the joinder . . . may be shown by a petition for removal to be only a fraudulent device to prevent removal[.]" *Chesapeake & Ohio Ry. Co. v. Cockrell*, 232 U.S. 146, 152 (1914) (citations omitted).[16]

Under the doctrine of fraudulent joinder, the relevant inquiry is whether plaintiff had a colorable claim against any of the nondiverse defendants. *See, e.g., Jerome-Duncan, Inc. v. Auto-By-Tel, LLC*, 176 F.3d 904, 907 (6th Cir. 1999) (citing *Alexander v. Electronic Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1999)). "The district court must resolve 'all disputed questions of fact and ambiguities in the controlling . . . state law in favor of the non removing party.' All doubts as to the propriety of removal are resolved in favor of remand." *Coyne v. American Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999) (quoting and citing *Alexander*, 13 F.3d at 949). The burden of proving fraudulent joinder is on the defendants, *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 433 (6th Cir. 2012) (citing *Alexander*, 13 F.3d at 949), and it is a heavy one. *See Murriel-Don Coal Co.,* 790 F. Supp. 2d at 597 (citing *Mayes v. Rappaport*, 198 F.3d 457, 463 (4th Cir. 1999)); *see also Walker v. Philip Morris USA, Inc.*, 443 F. App'x 946, 953 (6th Cir. 2011). As Judge Thapar noted, if any of plaintiff's state-law claims has even a "glimmer of hope," there is no fraudulent joinder. *Murriel-Don Coal Co.,* 790 F. Supp. 2d at 597 (citing *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 426 (4th Cir. 1999)).

---

[16]Judge Amul Thapar, newly appointed to the Sixth Circuit bench, offers a compelling critique of the fraudulent joinder doctrine. *See Murriel-Don Coal Co.,* 790 F. Supp. 2d at 594-97. That is not an issue this judicial officer can or will decide, however.

As long as plaintiff has at least one colorable claim against at least one nondiverse defendant, diversity jurisdiction is lost. Accordingly, I need look only to two of the state-law claims against Fabrizio & Brook for fraud and promissory estoppel.

In Count 3 of the pending complaint, plaintiff alleges that the defendants, including the attorneys at Fabrizio & Brook, made knowingly false representations to him that "he was approved for a forty-year loan modification," and that they would rescind the foreclosure.[17] (ECF No. 86 at ¶ 127, PageID.1427-28). Plaintiff further alleges that he reasonably relied on these misrepresentations, particularly given his lack of sophistication and the defendants' superior knowledge, to his detriment – not taking action to redeem the property within the time allowed. (*Id.*). Similarly, in Count 10, plaintiff alleges that the defendants, including Fabrizio & Brook, made an oral promise to honor the loan modification and to rescind the foreclosure; and that he reasonably relied upon it to his detriment. (*Id.*, PageID.1440-42).

Both plaintiff and the BNYM defendants agree on the elements of fraud: (1) that the defendants made a material misrepresentation; (2) that the defendants knew that it was false, or made it in reckless disregard of the truth; (3) that the defendants intended that plaintiff rely on the misrepresentation; (4) that plaintiff acted in reliance; and (5) that plaintiff suffered a resulting injury. (*See* ECF No. 86,

_____

[17]Under Michigan law, a claim for fraudulent misrepresentation "must be predicated upon a statement relating to a past or existing fact. Future promises are contractual and do not constitute fraud." *Hi-Way Motor Co. v. International Harvester Co.*, 398 Mich. 330, 336, 247 N.W.2d 813, 816 (1976). There is an exception to this rule, however, if "a promise [was] made in bad faith without intention of performance." 398 Mich. at 337-38, 247 N.W.2d at 816.

PageID.1427-28 (citing *M&D, Inc. v. McConkey*, 231 Mich. App. 22, 27, 585 N.W.2d 33, 36 (1998)); ECF No. 99, PageID.1761 (citing *Hi-Way Motor Co. v. International Harvestor Co.*, 393 Mich. 330, 336, 247 N.W.2d 813, 816 (1976)). Plaintiff's allegations, if true, appear to meet the elements of fraud under Michigan law. As such, they are colorable.

"Under Michigan law, courts will enforce a clear and definite promise under [the doctrine of promissory estoppel] if the promisee or a third party reasonably relied on the promise and injustice can only be avoided by its enforcement." *DBI Inv., LLC v. Blavin*, 617 F. App'x 374, 385 (6th Cir. 2015). The Michigan Supreme Court has explained that "the sine qua non of the theory of promissory estoppel is that the promise be clear and definite[.]" *State Bank of Standish v. Curry*, 442 Mich. 76, 85, 500 N.W.2d 104, 108 (1993). Here, plaintiff's claim *may* be deficient. But it cannot be said that it has no glimmer of hope.

The BNYM defendants argue that plaintiff's allegations fail to meet the heightened pleading standards for a fraud claim under Federal Rule of Civil Procedure 9(b). (ECF No. 99, PageID.1761).[18] There is a fundamental problem with this argument. The defendants fail to show that Michigan courts have adopted Rule 9(b)'s heightened pleading standards. In diversity cases, federal courts apply federal procedural rules, including Rule 9(b), *see, e.g., Minger v. Green*, 239 F.3d 793, 800 (6th Cir. 2001), but for purposes of proving fraudulent joinder, the defendants

---

[18]The BNYM defendants' supplemental brief incorporates by reference their previous motion to dismiss. (*See* ECF No. 184, PageID.2859).

must demonstrate that "plaintiff could not have established a cause of action . . . under *state* law." *Coyne*, 183 F.3d at 493 (emphasis supplied). In other words, that he had no chance of success in state court. Moreover, the defendants have failed to demonstrate with any specificity how plaintiff's allegations miss the mark, even if the requirements of Rule 9(b) did apply.

The BNYM defendants' offer only a conclusory statement that plaintiff's promissory estoppel claim lacks sufficient precision, adding that plaintiff "has not identified any promise." (ECF No. 99, PageID.1763-64). This is not entirely accurate. Plaintiff alleges that Shellpoint told him on September 29, 2015, that he was approved for a forty-year loan modification. (ECF No. 86, PageID.1441). Plaintiff further alleges that Diane Derenge of Fabrizio & Brook "spoke" with him and offered to assist him in rescinding the foreclosure. (*Id.*). Plaintiff asserts that Ms. Derenge "spoke" with him again on February 2, 2016, and that she "continued to provide [p]laintiff with good faith belief that [p]laintiff's loan modification was indeed going to be honored and the wrongful foreclosure would be rescinded." (*Id.*). Plaintiff specifically alleges that the defendants, including members of the Fabrizio & Brook law firm, "told him he was approved for a 40-year loan modification and that they would rescind the foreclosure"; he also alleges that he was "promised" the loan modification. (*Id.* at ¶¶ 127-28, PageID.1427-28).[19]

---

[19]The allegations from the fraud claim were explicitly incorporated by reference into the promissory estoppel claim. (*See* ECF No. 86 at ¶ 245, PageID.1440).

Plaintiff's promissory estoppel claim is not the model of clarity. Will he prevail on this claim? It is not clear that he will. But it is at least conceivable that he could. Thus ending the fraudulent joinder inquiry. *See Murriel-Don Coal Co.*, 790 F. Supp. 2d at 598.

The BNYM defendants' argue that Ms. Derenge's October 21, 2015, email, to which plaintiff cites in his complaint, undermines both his fraud and his promissory estoppel claims because the email simply indicates that the foreclosure sale "could" or "can" be rescinded, and that it makes no mention of a loan modification. (ECF No. 99, PageID.1761-62, 1764). But plaintiff's claims are not limited to the email communication; he also alleges that promises were made to him orally separate and apart from the email communication. (*See* ECF No. 86 at ¶¶ 127, 263-64, PageID.1427-28, 1441).

The BNYM defendants' argument that Fabrizio & Brook's status as legal counsel precludes liability for actions taken in the course of representing a client (ECF No. 184, PageID.2860) falls short. The cases upon which defendants rely are not entirely apposite to plaintiff's fraud and promissory estoppel claims, as these claims assert wrongdoing beyond simply what occurred as part of the foreclosure process *per se*. The defendants' argument also presupposes that the Fabrizio & Brook attorneys's roles were limited to providing legal representation during the foreclosure process. Plaintiff's claims can reasonably be interpreted more broadly than that. At least it is not inconceivable that a factfinder could make such a finding.

C.   Defendants Have Failed to Meet Their Burden To Show That The Nondiverse Defendants Are Dispensable.

The BNYM defendants ask, in the alternative, that the nondiverse defendants be dismissed, pursuant to Federal Rule of Civil Procedure 21, as dispensable parties. (ECF No. 184, PageID.2861).  Rule 19(a) defines those persons who should be joined as parties to the action.  As a result of 1966 amendments to the rule, "the necessary-party label has been eliminated to emphasize that the real purpose of this rule is to bring before the court all persons whose joinder would be desirable for a just adjudication of the action and the term 'indispensable' is used in Rule 19(b) only in the conclusory sense."  7 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 1604 at 35 (3d ed. 2001).  Under Rule 19(a)(1), a party must be joined if that party's presence is required to accord complete relief among the existing parties:

> [T]he description of necessary parties in the Supreme Court's opinion in *Shields v. Barrow* is still relevant to an understanding of how subdivision (a) should be applied.  In that case the Court identified those who should be joined as those "persons having an interest in the controversy, and who ought to be made parties, in order that the court may act on that rule which requires it to decide on, and finally determine the entire controversy, and do complete justice, by adjusting all the rights involved in it."
>
> There is no precise formula for determining whether a particular nonparty must be joined under Rule 19(a).  The decision has to be made in terms of the general policies of avoiding multiple litigation, providing the parties with complete and effective relief in a single action, and protecting the absent persons from the possible prejudicial effect of deciding the case without them.

*Id.* at 38 (quoting *Shields v. Barrow*, 17 How. (58 U.S.) 130, 139 (1855)).

The first joinder standard under Rule 19(a)(1) "furthers the interest of the public in judicial economy by avoiding repeated lawsuits involving essentially the same subject matter." 7 WRIGHT, MILLER & COOPER, § 1604 at 47. The Sixth Circuit noted: "Generally, where its jurisdiction is properly invoked, the court is inclined to adjudicate fully the matter before it. . . . Also the court is compelled by the desire to avoid the cost and time consumed in multiple litigation and to avoid possible inconsistent results in multiple litigation arising out of the same factual setting." *Boles v. Greenville Hous. Auth.*, 468 F.2d 476, 478 n.3 (6th Cir. 1972). The BNYM defendants bear the burden of demonstrating that the other defendants were improperly joined. *See id.* at 478.

The BNYM defendants offer nothing more than conclusory statements to support their contention that the nondiverse defendants are all dispensable. (*See* ECF 184, PageID.2861). They offer nothing specific to the Fabrizio & Brook defendants (which includes Jonathan Engman). Instead, the defendants generally assert that, because plaintiff has asserted joint and several liability, "he is free to pursue any valid claims he has against those parties independently of this action." (*Id.*, PageID.2862). The only other contention is the general assertion that none of the nondiverse defendants hold an interest in the property that was subject to foreclosure. (*Id.*).

The defendants fall well short of meeting their burden of demonstrating that all of the nondiverse defendants are dispensable. Plaintiff's fraud and promissory estoppel claims suggest that the participation of both Shellpoint and Fabrizio & Brook in the litigation are required to afford plaintiff complete and effective relief in a single action, and to avoid unnecessary multiplication of lawsuits concerning the same subject

matter.  The pending complaint alleges, in effect, that Shellpoint and Fabrizio & Brook were complicit with each other in the purported fraudulent conduct.  (*See* ECF No. 86 at ¶¶ 9, 127-28, 134, 260, 263-65, PageID.1416-17, 1427-29, 1441).  Moreover, the interconnectedness of the allegations against Shellpoint and Fabrizio & Brook was evident in the original complaint.  (*See* ECF No. 1-2 at ¶¶ 15-16, PageID.15 (alleging that the law firm represented Shellpoint during the foreclosure proceeding, and that the firm made certain representations to him concerning his loan modification application)).  Whether plaintiff will be able to sustain these claims is, of course, another matter.

    D.    <u>The Court Should Not Exercise Its Discretion to Retain Supplemental Jurisdiction Over the Remaining State Claims</u>

The BNYM defendants contend that, apart from the question of diversity jurisdiction, the Court retains subject matter jurisdiction even after dismissal of the Fourteenth Amendment claims by virtue of the fact that plaintiff brought a federal claim in his original complaint.  (ECF No. 184, PageID.2862).  They cite to Sixth Circuit precedent for the proposition that "[t]he Court looks to the original complaint because 'subject matter jurisdiction is determined by examining the complaint as it existed at the time of removal.' "  (*Id.*) (quoting *Harper v. Autoalliance Int'l, Inc.,* 392 F.3d 195, 210 (6th Cir. 2004)).  " 'When a subsequent narrowing of the issues excludes all federal claims, whether a pendant [sic] state claim should be remanded to state court is a question of judicial discretion, not of subject matter jurisdiction.' "  *Harper,*

392 F.3d at 210 (quoting *Long v. Bando Mfg. of Am., Inc.*, 201 F.3d 754, 758 (6th Cir. 2000) (citations omitted)).

The defendants' argument assumes that the RESPA claim was sufficient to confer federal question jurisdiction on the Court. As discussed above, that is very much in doubt. Nevertheless, and giving the defendants the benefit of the doubt, I will assume for purposes of this report and recommendation that the Court has federal question jurisdiction. Even so, the Court should not exercise its discretion to retain supplemental jurisdiction.

There is nothing about this case that warrants the Court taking the unusual step of retaining supplemental jurisdiction over purely state claims. It is regrettable that the case could not have been remanded sooner, but it has not progressed beyond the challenges to the adequacy of pleadings. The observations in the concurring opinion of Justices Breyer and Souter in *Carlsbad Technology, Inc. v. HIF Bio, Inc.*, are apt: "[T]he law grants the District Court broad discretion to determine whether it should keep such cases on its docket, that a decision to do so (or not to do so) rarely involves major legal questions, and that (even if wrong) a district court decision of this kind will not often have major adverse consequences." 556 U.S. at 644. It is patent that defendants remain free to use the legal arguments they developed in this Court regarding deficiencies in plaintiff's pleading of claims under Michigan law.

## **Recommendation**

Accordingly, and for the reasons stated herein and on the record, I recommend that defendants' motions to dismiss (ECF No. 99, 103, 115) be granted only as to Counts 6 and 14, and that they be denied without prejudice as to all other claims. I recommend that plaintiff's motion for remand (ECF No. 186) pursuant to 28 U.S.C. § 1447(c) be denied. (*See* footnote 9, *supra*). I further recommend that the Court decline to exercise supplemental jurisdiction over plaintiff's state claims, and that it remand the remaining state claims to the 48th Circuit Court, Allegan County, Michigan, pursuant to 28 U.S.C. § 1367(c).


Dated:   September 6, 2017          /s/  Phillip J. Green
                                    PHILLIP J. GREEN
                                    United States Magistrate Judge


## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008). General objections do not suffice. *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).